

Michael T. Pines (SBN 77771)
Pines & Associates
732 N. Coast Highway 101, Suite B
Encinitas, California 92024
Telephone:  760-642-0414
Facsimile:  760-301-0093
michaeltpines@gmail.com

Attorneys for Plaintiffs

BY:

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

10 DEC 29  PM 3: 00

FILED

*UNITED STATES DISTRICT COURT*

*CENTRAL DISTRICT OF CALIFORNIA*

SACV10-01987 DOC

JCG

RENE ZEPEDA, OTILIA A. ZEPEDA, and
ANA BODDEKER
                        Plaintiffs,

vs.

WASHINGTON MUTUAL BANK, F.A.,
CALIFORNIA RECONVEYANCE
COMPANY, BANK OF AMERICA,
N.A., SUCCESSOR BY MERGE TO
LASALLE BANK NA AS TRUSTEE
FOR WAMU MORTGAGE PASS-
THROUGH CERTIFICATES SERIES
2007-OA6 TRUST, JP MORGAN
CHASE BANK, N.A., SUCCESSOR IN
INTEREST TO WASHINGTON
MUTUAL BANK, F.A, LA SALLE
BANK N.A., AS TRUSTEE FOR
WAMU; RANDAL NAIMAN, an
individual; NAIMAN LAW GROUP
WILLOUGHBY BEAN LLC;
SARALAND INVESTMENTS;
DESCHUTES RIVER PROPERTIES;
NORTHWEST PROPERTIES
ASSOCIATES; PACIFIC BEND
ASSOCIATES; LB MARSHELL LAW;
KIP ADKINS; AEGIS REALTY
PARTNERS, INC; ORANGE COUNTY
SHERIFF'S DEPARTMENT; NEWPORT
BEACH POLICE DEPARTMENT; and
DOES 1-10;
                        Defendants.

Case No.:_____

**COMPLAINT
FOR VIOLATIONS OF:**

1) **FAIR DEBT COLLECTION
PRACTICES ACT;**

2) **42 U.S.C. §1983**

3) **ROSENTHAL ACT;**

4) **CALIFORNIA BUSINESS &
PROFESSIONS CODE § 17200**

5) **SET ASIDE TRUSTEE SALE**

6) **CANCEL TRUSTEE'S DEED**

7) **QUIET TITLE**

8) **ACCOUNTING**

9) **TRESPASS**

10) **ABUSE OF PROCESS**

BY FAX

**JURY DEMAND**

1
COMPLAINT

**PRELIMINARY STATEMENT**

This Complaint is based on federal jurisdiction under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq.* ( "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices and seeks declaratory and injunctive relief for the individual Plaintiffs statutory damages, actual damages, punitive damages and attorneys fees.

## I. INTRODUCTION

1.     Plaintiffs are now, and at all times relevant to this complaint were owners of real property commonly known as, 19 Coral Cay, Newport Beach, California 92657 ("Subject Property").

2.     At its core, this case is about predatory lending practices, and the biggest fraud ever perpetrated in the U.S. – securitization. Specifically, this case is brought against the above named Defendants who were involved in the fraud by aiding and abetting in the subsequent fraudulent, deceptive and abusive eviction of Plaintiff home owners.

3.     Plaintiff's loan was securitized ("the loan".) As is typical when a loan is securitized, the funds Plaintiffs borrowed did not come from any source that Plaintiffs could readily identify.  Instead, the money came from "Investors," the identity of whom was concealed by those involved in originating the loan ("Originators"). Notably, Investors all over the United States who actually loaned Plaintiffs money in the first place have filed their own legal actions based at least in part on the very same allegations of predatory lending Plaintiffs were subjected to. Some examples are: Boilermaker National Annuity Trust Fund ("Boilermaker National") v. WAMU Mortgage Pass Through Certificates, WMA., United States District Court, Western District of Washington at Seattle, Case # C090037; New Orleans Employees' Retirement System et al v. Federal Deposit Insurance Corporation, et al., United States District Court, Western District of Washington at Seattle, Case *No: 2:09-cv-00134-MJP;* filed on August 14, 2009; New Orleans

1  Employees Retirement System et al v. First American Corporation et al., United
2  States District Court, Western District of Washington at Seattle, Case *No: 2:09-*
3  *cv-00137-MJP,* filed on August 14, 2009; and Doral Bank Puerto Rico v.
4  Washington Mutual Asset Acceptance Corporation et al; United States District
5  Court, Western District of Washington at Seattle, Case*No:2:09-cv-01557-MJP,*
6  filed on March 24, 2010.  Even quasi-federal agencies that invested are filing
7  actions. See, e.g., Federal Home Loan Bank of San Francisco v. Credit Suisse,
8  CGC-10-497840 and Federal Home Loan Bank of San Francisco v Deutsche
9  Bank, CGC-10-497839, San Francisco Superior Court (collectively all of the
10  above investor actions are the "Investor Cases"). The Federal Home Loan Bank
11  of New York, reputed to be the largest and most powerful banking institution in
12  the world has publicly it's intention to file similar suit against Bank of America.

13      4.      Even before the loans were made, the "Securitizers" had planned and
14  arranged to securitize the loans. In the course of securitizing the loans,
15  Securitizers had a practice of taking more money from the Investors than was
16  loaned to the homeowners, and they concealed this practice from both the
17  homeowners (including Plaintiffs and those similarly situated) and the Investors.
18  In addition, there were usually "credit enhancements" which could take several
19  forms including such things as "excess spreads", over collateralization, reserve
20  accounts, surety bonds, wrapped securities, letters of credit, and cash collateral
21  accounts. (See, http://en.wikipedia.org/wiki/Credit_enhancement for a more
22  detailed description).  On information and belief, Plaintiffs allege that the well-
23  known problems with American International Group (AIG) relate to credit
24  enhancements. Both the Plaintiffs and the Investors have claims to the credit
25  enhancement funds as well as undisclosed fees taken by the Originators and
26  Securitizers and possible credits and offsets for other items.

27      5.      As to Plaintiffs, such funds should be credited against their loans. But
28  it is even worse.  For example, according to Plaintiff Zepedas' records they paid at

1   least tens of thousands of dollars were not actually owed.  Plaintiffs allege that

2   once a proper accounting is done and proper credits applied, it will be shown

3   Plaintiffs will owe nothing on their loan making the unlawful detainer action used

4   to evict them simply a part of the ongoing fraud. The Defendants had actual

5   knowledge of this, yet, Defendants decided to aid and abet in the fraud.

## II.  SECURITIZATION OF MORTGAGE LOANS INCLUDING PLAINTIFFS

6.      Securitization is intentionally complex and the details and even some of the mathematical calculations involved cannot be succinctly set forth in a complaint.

7.      As set forth in the Investor Cases, the securities that the Securitizers sold are so-called asset-backed securities, or "ABS," created in a process known as securitization. More specifically, they involved a complex financial instrument product known generically in the securities industry as collateralized debt obligations ("CDOs"). "Synthetic" CDOs are even more complex instruments that are "derivatives" based only indirectly on the CDOs (i.e., Credit Default Swaps).

8.      Securitization begins with the sale of bonds to Investors (usually they are sold "forward," meaning they are sold to the investors before the Investors' funds are given to mortgage borrowers such as the Plaintiffs.  Only some of the funds were then used to fund loans such as Plaintiffs home owners. Investors were led to believe all of their funds except for reasonable fees were forwarded, but this was false.

9.      The entities involved in making the loans are known as the Originators. The process by which the Originators decide whether or not to make particular loans is known as the underwriting of loans. During the loan underwriting process, representations were made to the Investors that the originators would apply various criteria to try to ensure that the loan will be

1    repaid. However, they did not do so and instead, the way the securitization

2    scheme was structured, it was actually in the best interests of the "Securitizers"

3    (including Originators) for the loans to fail.  They were clearly not acting with the

4    interests of Plaintiffs or the Investors in mind.

5        10.    Until the loans are securitized, the borrowers on the loans sometimes

6    make their loan payments to an Originator, but this may never occur or only be

7    for a very short time. Collectively, the payments on the loans are known as the

8    cash flow from the loans.

9        11.    A large number of loans, often of a similar type, were supposed to be

10   grouped into a collateral pool. The Originator of those loans claims it sells them

11   (and, with them, the right to receive the cash flow) to a special purpose vehicle

12   called a trust by the Securitizers. The trust is supposed to pay the Originator cash

13   for the loans. As mentioned, the trust raises the cash to pay for the loans by

14   selling bonds, in the form of certificates, to Investors. Each certificate purportedly

15   entitles its holder to an agreed part of the cash flow from the loans in the

16   collateral pool.

17       12.    There are tranches of investment bonds sold.[1] Typically, "Tranche A"

18   is a veneer of conventional mortgages where the borrowers appear creditworthy.

19   Other tranches had much less credit worthy borrowers.  Using the creditworthy

20   borrowers, the Securitizers obtained ratings on the bonds that were inaccurate at

21   best. Securitizers conspired with the rating agencies to mislead investors. Thus,

22   schematically, these are some of the steps in a securitization in no specific order:

23               a. Investments are created for Investors usually in the form of

24                  Bonds.

25               b. Credit Enhancements are obtained.

26               c. Rating agencies are provided misleading information and paid

27   _____

28   [1] "Tranche" is a French word for "slice".  A tranche is a portion, or slice of a structured financing. Different tranches have different risks, rewards, and/or maturities.

to rate the Bonds as "safe".

d. Investors pay money to the trust.

e. The trust issues certificates to the Investors.

f. The trust pays money to the parties up the chain toward the borrower/property owner through the Originators.

g. Only part of the funds are used to fund mortgage loans such as the one made to plaintiffs.

h. The rest of the money is kept by the Originators and Securitizers in the scheme. In other words, by way of example, the Investors might think they are funding a loan for $1 million, however, only $500,000 is actually loaned to borrowers such as the plaintiffs, and the Securitizers keep the rest through a complex series of transactions.

i. The Originator and Securitizers plan in advance for the loans to default.

j. Loans made to persons like Plaintiffs are purportedly placed into one or more pools.

k. The Originator was supposed to assign to the trust the loans and in particular the promissory notes, which were to be placed into a collateral pool, including the right to receive the cash, but a proper assignment/transfer was never done.

l. The trust is supposed to collect cash flow from payments on the loans in the collateral pool; however it has no legal right to do so even under the lengthy, complex documents used in securitization.

m. When the mortgage loans go into default, the Securitizers demand that payment be made to the Investors by the "credit enhancements."

n.  In "Credit Default Swaps" the Securitizers also placed "bets" that the loans would not pay off (as was planned) in order to cover the difference between what was loaned to borrowers such as Plaintiff and what was funded by the Investors and make another hidden profit for the Securitizers.  According to some published reports, these unregistered securities were frequently more than 30 times the principal on the mortgage loans (such as Plaintiffs').  Thus, if the borrowers such as Plaintiffs did not perform on the loans, the Securitizers would make more money than if they did.

o.  After default, even though the mortgage loan is technically paid in full if a proper accounting were done, and legally the Securitizers have no right to collect, the Securitizers, usually through "servicers", pretend the loan is still owed by the borrowers. They pretend and represent to persons such as Plaintiffs money is owed on the loans to the original named "beneficiary" on the deed of trust, and try to foreclose on the mortgage and steal the mortgaged real property from borrowers such as the Plaintiffs. The Mortgage Electronic Registration System ("MERS") was often used as a part of the scheme named as the "nominal beneficiary" to pretend it had the right to transfer the mortgages and/or collect money from the borrowers such as Plaintiffs.

p.  Securitizers hire law firms such as Defendants who know or should know collection of loans such as the Subject Loan is improper and routinely conceal information concerning such to the courts.  (See In Re Nosek, 406 B.R. 434.)

q.  Recently, the U.S. Supreme Court has found that these law

1               firms are liable in class actions under the Fair Debt Collection

2               Practices Act. (See Jerman v. Carlisle, McNellie, Rini, Kramer

3               & Ulrich LP, et al., 130 S. Ct. 1605; decided April 21, 2010).

4     13.    At the risk of being redundant, but also more specific and adding that

5 the taxpayers are paying for this, the order of things is usually as follows:

6              • The first transactions that occurred were the sale of securities to

7                 unsuspecting investors.

8              • The second transaction that occurred was that the investor's

9                 money was put into an account at an investment banking firm.

10            • The third transaction was that the investment banker divided the

11              money between fees for itself and then distributing the funds to

12              aggregators or a Depository Institution.

13            • The fourth transaction was the closing with the borrower. The

14              loan was funded with the money from the investor after

15              deducting large undisclosed fees and also because of the

16              disparity between the interest payable to the investor and the

17              interest payable by the borrower, a yield spread was created,

18              adding huge sums to what the investment banker took without

19              disclosure to the investors or the borrowers.

20            • The fifth was the assignment and acceptance of the loan

21              generally into between 1 and 3 asset pools, each bearing

22              distinctive language describing the pool such that they appeared

23              to be different assets than already presumed to exist in the first

24              pool.

25            • The sixth was the receipt of insurance or counter-party

26              payments on behalf of the pool pursuant to the documents

27              creating the securitization structure.

28            • The seventh was the re-securitization of the pooled assets

between one and three times.

- The eighth was the federal bailout payments and receipts allocable to the balances owed on the loans that were claimed to be part of the pool.

- The ninth are the foreclosures by parties who never provided any money which is often the original named beneficiary on the trust deed.

- In the alternative fraudulent and forged assignments were made, so it could be alleged the law firm defendants represent investors ("robo-signing") occurred which is currently the subject of criminal investigations.[2]

- Lastly, attorneys are hired to evict the home owners such as plaintiffs.

- After eviction, the house is sold to a new home owner who is also defrauded since they are told none of this, and no one knows at this point where the proceeds from the sales go.

- It is unlikely it goes back to the government which has at least indirectly funded all this through "bail outs".

14.     Securitization involves many documents. In broad brush, it involves the closing documents between loan Originators, Servicers, Special Purpose Vehicles, Aggregators, etc. including the Pooling and Service Agreements, the Assignment and Assumption Agreements, the Master Service Agreements [if separate]. None of these include the borrower as party or references any specific debtor or borrower because the debtor is unknown when the securitization structure is created.

15.     Each securitization has a Sponsor, a prime mover of the securitization.

---

[2]See, http://online.wsj.com/article/SB10001424052702303450704575160242758576742.html?mod=WSJ_hps_LEFTWhatsNews

1    Sometimes the sponsor is the Originator or an affiliate. In Originator-sponsored
2    securitizations, the collateral pool usually contains loans made by the Investors.
3    Sometimes, the Sponsor may be an investment bank.

4        16.    The two important documents in the mortgage loan made to the home
5    owner/borrower are the promissory note and the mortgage (usually a deed of trust
6    as in Plaintiffs' loans in California).

7        17.    The Sponsor is supposed to arrange for title to the mortgage loans to
8    be transferred to an entity known as the Depositor, which then was supposed to
9    transfer title to the loans to the trust, including the promissory notes.

10        18.    As mentioned, the assignment of the notes and mortgages never
11    properly occurred and this is the subject of countless lawsuits by the borrowers
12    such as Plaintiffs.[3]

13        19.    The obligor of the certificates in a securitization is supposed to be the
14    trust that purchases the loans in the collateral pool. However, this cannot be true
15    because title to the mortgage loans was never perfected. The trust is a mere
16    conduit that has no power to do anything, and has no real trustee.

17        20.    The Pooling and Service Agreements provide certain time deadlines
18    by which transfers were to be made, and these were not met.

19        21.    When a trust has no assets it cannot satisfy the liabilities of an issuer
20    of securities (the certificates). According to the Investor Cases, the law therefore
21    treats the Depositor as the issuer of an asset-backed certificate.

22        22.    According to the Investor Cases, securities dealers, represented that
23    they would underwrite the sale of the certificates. Most important, securities

---

[3] This is the point where the Mortgage Electronic Registration System ("MERS") became a part of the scheme which is itself subject to an increasing number of lawsuits including class actions, as in, for example, New York (Campbell v. MERSCORP, Inc, et al., USDC, E.D. NY, Case #10CV3800, filed August 17, 2010), and Florida (Figueroa v. MERSCORP, Inc., et al., USDC, S.D.Fla, Case #10CV61296-CMA, filed July 26, 2010). Recently, even Fannie Mae issued new rules stating the MERS has no authority concerning its loans.

1   underwriters provided to potential investors the information that they need to

2   decide whether to purchase certificates.

3      23.   Because the cash flow from the loans in the collateral pool of a

4   securitization is purportedly the source of funds to pay the holders of the

5   certificates issued by the trust, the credit quality of those certificates, if this were

6   true, would be dependent upon the credit quality of the loans in the collateral

7   pool. According to the Investor Cases, the most important information about the

8   credit quality of those loans is contained in the files that the Originator develops

9   while making the loans, the so-called loan files. For residential mortgage loans,

10  each loan file normally contains the information in such important documents as

11  the borrower's application for the loan, credit reports on the borrower, and an

12  appraisal of the property that will secure the loan.

13     24.   Collateral pools usually include thousands of loans. Instead of

14  potential investors individually reviewing thousands of loan files, the securities

15  firms that would underwrite the sale of the certificates in a securitization were

16  supposedly responsible for gathering, verifying, and presenting to potential

17  investors the information about the credit quality of the loans that will be

18  deposited into the trust.

19     25.   As was alleged in the Investor Cases, the Securitizers sold to the

20  Investors certificates in securitizations the information that was presented to

21  Investors contained many false statements that were material to the mortgage/loan

22  transactions.

23                    **III.  JURISDICTION AND VENUE**

24     26.   This Court has jurisdiction under the Federal Fair Debt Collection

25  Practices Act ("FDCPA"), 15 U.S.C. § 1692k, and over the state claims pursuant

26  to supplemental jurisdiction, 28 U.S.C. § 1367.

27     27.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391

28  (c). Plaintiffs' action for declaratory relief is authorized by 28 U.S.C. §§ 2201 and

2202.

## IV.  PARTIES

28.     Plaintiff RENE ZEPEDA is a natural person who resides in the County of Orange, State of California, and is a "consumer" as that term is defined by U.S.C. § 1692a(3) as are all plaintiffs.

29.     Plaintiff OTILIA ZEPEDA is a natural person who resides in the County of Orange, State of California.

30.     Plaintiff ANA BODDEKER is a natural person who resides in the County of Orange, State of California.

31.     Defendant CALIFORNIA RECONVEYANCE COMPANY, is a California corporation with its principal place of business in Chatsworth, California ("CALIFORNIA RECONVEYANCE").

32.     Defendant BANK OF AMERICA, NATIONAL ASSOCIATION AS SUCCESSOR BY MERGER TO "LASALLE BANK NA AS TRUSTEE FOR WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA6 TRUST., is a Nationally Charted Bank principal place of business in Thousand Oaks, California  ("BANK OF AMERICA")

33.     Defendant JP MORGAN CHASE BANK, N.A., SUCCESSOR IN INTERESTS TO WASHINGTON MUTUAL BANK, F.A., is an investment banking and retail banking firm, authorized to do business in the 50 states of the United States, with its corporate headquarters in New York ("JP MORGAN").

34.     Defendant LA SALLE BANK, N.A. is a National Bank, with its headquarters in Chicago, and of the regional offices in Los Angeles, California ("LASALLE BANK").

35.     Defendant WILLOUGHBY BEAN LLC, is a California corporation with its principal place of business in Fullerton, California ("WILLOUGHBY").

36.     Defendant     SARALAND     INVESTMENTS,     a     California Unincorporated Association ("SARALAND").

37.     Defendant DESCHUTES RIVER PROPERTIES, a California Unincorporated Association ("DESCHUTES").

38.     Defendant NORTHWEST PROPERTIES ASSOCIATES, a California Unincorporated Association ("NORTHWEST").

39.     Defendant PACIFIC BEND ASSOCIATES, an    unknown    entity ("PACIFIC BEND").

40.     Defendant LB MARSHELL LAW, a California Unincorporated Association ("LB MARSHELL").

41.     Defendant RANDAL NAIMAN ("NAIMAN") is an attorney with his principal place of business located in San Diego, California.

42.     Defendant law firm NAIMAN LAW GROUP, is a law firm with its principal place of business in San Diego, California (Naiman and Naiman Law Group are collectively "Law Firm").

43.     Defendant KIP ADKINS is an individual who is a realtor working under his broker AEGIS REALTY with offices in Laguna Niguel, California.

44.     Defendant AEGIS REALTY PARTNERS, INC. is a California corporation located in Oakland, California.

45.     Defendant ORANGE COUNTY SHERIFF'S DEPARTMENT is a law enforcement agency with a place of business in Orange and Los Angeles Counties, California.

46.     Defendant NEWPORT BEACH POLICE DEPARTMENT is a law enforcement agency with a place of business in the Newport Beach, California. (Defendant Sheriff and Police are collectively "Law Enforcement or Law Enforcement Agencies".)

47.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 100, inclusive, and, therefore, sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege the true names and capacities of these Defendants when ascertained.

1   Plaintiffs are informed and believe that each of the fictitiously named Defendants
2   is responsible in some manner for the occurrences alleged herein and proximately
3   caused Plaintiffs damages.

4       48.    Plaintiffs are informed and believe, and thereupon allege, that at all
5   pertinent times each of the Defendants was the agent of each of the remaining
6   Defendants, and /or acted with their consent, ratification and authorization, and/
7   or aided and abetted one another in doing the acts alleged herein, each of the
8   Defendants acted in such capacity with respect to the remaining Defendants.

9                  **VII.   FACTUAL ALLEGATIONS**

10      49.    The core of this action arises out of a loan made to Plaintiffs that was
11  securitized, and which was "predatory" by legal definition.  On or about May 23 ,
12  2007, a Deed of Trust was executed relating to the Subject Property.  This Deed
13  identified:

14          a.  "Borrower" as the plaintiff Zepedas;

15          b.  "Lender" as Washington Mutual Bank NA ("Washington Mutual").;

16          c.  "Trustee"  as  California  Reconveyance  Company  ("California
17              Reconveyance").

18      50.    During  the  closing  of  the  loan,  Originators  acquired  the  loan,
19  evidenced by a promissory note and secured by a trust deed on the home.  The
20  terms of the loan was memorialized primarily in a promissory note.

21      51.    The promissory note was never properly assigned to anyone.

22      52.    The funds for the loan were provided by Investors and fraud was
23  committed in the securitization process as alleged above.

24      53.    There was a subsequent foreclosure related activity on the Subject
25  Loan whereby Defendant CALIFORNIA RECONVEYANCE transferred the
26  Subject Property to Defendant BANK OF AMERICA, at the foreclosure sale.

27      54.    Defendants and BANK OF AMERICA and NAIMAN promptly
28  pursued the eviction of Plaintiffs.

55.     The deed of trust identified various parties as the "lenders." This was false and misleading because, *inter alia,* the funds came from Investors. In agreeing to sign the loan documents and to encumber the Subject Property with a deed of trust, Plaintiffs relied upon promises made by the Originators.

56.     The Originators concealed from Plaintiffs their intent to securitize the loans and misrepresented the identity of the party providing the funds for his loan.

57.     In many cases such as Plaintiffs, assignments of a deed of trust were recorded which purportedly assigned the deeds of trust from the original named "lender" to third parties. These assignments were invalid, and created fraudulently and/or forged.

58.     In all cases, the amounts claimed to be in default are incorrect and/or includes charges not permitted under the loan documents or by law.

59.     Securitizers have made false statements concerning the amounts owing at various points in time to Plaintiffs. In fact, defendants have never shown the proper amounts claimed owing on the loans and Plaintiffs are informed and believe Defendants cannot do so, due at least in part to the massively complex mathematical calculations that would be required.

60.     In recording Notices of Defaults ("NODs"), Securitizers unlawfully initiated non-judicial foreclosure proceedings against Plaintiffs by improperly claiming amounts not owing.

61.     The NODs state, inter alia: "NOTE(S) FOR THE ORIGINAL [Trust Deed] …are presently held by the undersigned…." This was false; the foreclosing parties did not hold the note connected to the Plaintiff ZEPEDA'S trust deed.

62.     Securitizers, in committing the acts alleged in this Complaint, are engaging in a pattern and practice of unlawful activity. In pursuing the non-judicial foreclosures, Securitizers represented that they had the right to payment under the note in connection with the loan, payment of which was secured by a deeds of trust.   Whereas, in fact, the Securitizers were not in possession of the

1   note and they were neither holders of the note or assignees of the note or trust
2   deed entitled to payment and therefore they were proceeding to foreclose without
3   rights under the law.

4       63.    The final stage of a foreclosure proceeding is a sale of the Subject
5   Property through a public auction at which the current beneficial owner of the
6   right to foreclose is the only lawful party who can provide instructions to the
7   trustee on the amount of money to accept at the sale or to "credit bid" up to the
8   amount owed on the loan.  In fact, none of the Securitizers, or any of their
9   authorized agents, who have played a part in the non-judicial foreclosure
10   proceedings were entitled to receive payment from the loan proceeds, or title to or
11   possession of the Subject Properties, or to give instructions to any trustee on the
12   deed of trust.  The making of the assertion in the foreclosure proceedings that the
13   beneficiary was entitled to foreclose and the NODs and trustee sale based on
14   amounts not properly owing is an act of fraud or deceit within the meaning of
15   Cal. Civ. Code §2924h.

16       64.    The intent to securitize, the fraudulent acts and omissions involved in
17   the origination, transfers of the Subject Loans, and securitization of the Subject
18   Loans, were concealed from Plaintiffs.

19       65.    Defendant BANK OF AMERICA claimed to have purchased the
20   subject properties at the trustee sale ("Purchasers"), however, they are not Bona
21   Fide Purchasers, had no legal right to possession, were informed of such, and
22   were asked to cooperate but instead pursued an unlawful detainer.

23       66.    Securitizers and Purchasers, by and through their attorneys, the
24   Defendant Law Firm, filed an Unlawful Detainer eviction action against Plaintiffs
25   claiming that their clients were the rightful owner of the subject properties and
26   were entitled to possession. At the time these complaints were filed, Defendants
27   Law Firm knew of the material defects of said foreclosure sales. In fact, they
28   were notified and had personal knowledge of such. However, instead of ceasing

1  their unlawful activities, the Law Firm Defendants often personally verified the

2  complaints, and in some cases other documents claiming to have personal

3  knowledge of the complaints for eviction and asserted they knew their contents to

4  be true. The real facts are that Defendant Law Firms were/are fully aware that

5  Plaintiffs' loans were securitized, and that their clients had no legal right to

6  foreclose, and intentionally concealed this from the courts in the eviction actions

7  in order to steal Plaintiffs' property.

8      67.    Defendant Law Enforcement Agencies aided and abetted in the

9  eviction of Plaintiffs when they had actual knowledge that the eviction activities

10  were improper and they were therefore aiding and abetting in a fraud, and in fact

11  committing crimes by aiding and abetting Defendants BANK OF AMERICA and

12  NAIMAN in trespassing and other crimes.

13      68.    Plaintiffs attempted to make a citizens arrest under California Penal

14  Code §837 of the Defendants for their criminal fraud and trespass, and Law

15  Enforcement wrongfully refused to cooperate.

16      69.    Plaintiffs also sought to serve post-judgment Claims of Right To

17  Possession for the adult occupants not named in the Unlawful Detainer on the

18  Law Enforcement Agencies but they unlawful refused to accept them.

19      70.    Defendant Law Enforcement Agencies have a pattern and practice of

20  unlawfully evicting homeowners, even including performing evictions after a

21  bankruptcy is filed and an automatic stay is obtained. (See, e.g., Hanloh v.

22  Shepard Investments, Inc.; Law offices of Sam Chandra; Los Angeles Sheriff

23  Department, California Bankruptcy Court, Central District, Case No. 2:10-BK-

24  17206).

25      71.    Law Enforcement has procedures in place that are unlawful and lack

26  procedures to properly evict home owners and engage in a pattern and practice of

27  aiding and abetting in wrongfully evicting home owners.

28  ///

# VIII. CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### VIOLATION OF THE FDCPA, 15 U.S.C. § 1692

**(Against Defendant CALIFORNIA RECONVEYANCE and Defendants Law Firms, Acting As Debt Collectors And Others to Be Alleged By Amendment)**

72.     Plaintiff repeats and re-alleges each and every allegation contained above.

73.     Defendants have concealed the roles of the parties and Plaintiffs are unsure who, other than named defendants, are "debt collectors" of the loan. Plaintiffs will amend this complaint when the appropriate parties who were debt collectors are discovered.

74.     Federal law prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt..."

75.     In prosecuting the unlawful detainers the debt collector Defendants:

        a.      made false, deceptive and misleading representation concerning their standing to sue the plaintiffs and the interest in the debt;

        b.      falsely represented the status of the debt, in particular, that it was due and owing by defendants to plaintiffs at the time an eviction suit was filed;

        c.      falsely represented or implied that the debt was owing to defendants as an innocent purchaser for value, when in fact, a valid and legal assignment had not been accomplished;

        d.      threatened to take action, namely engaging in collection activities and collection and foreclosure proceedings as trustees that cannot legally be taken by them, and

        e.      obtained access to state courts to evict home owners, under false pretenses, namely, that Defendants were duly authorized

to engage in such activities when in fact they were not, and

f.    in the case of Purchasers, Law Firm Defendants, knew or should have known they did not acquire proper title and proceeded with eviction proceedings against Plaintiff home owners anyway.

76.    Defendants did not, and cannot, obtain and/or file an assignment of the notes or mortgages of the named Plaintiffs or putative class members at this time as it would violate the "Pooling and Service Agreements" used in securitization.

77.    Securitizers discovered that that the assignments and proper documents to collect the Subject Loans could not actually be located. To solve the problem of missing assignments, and other documents, new assignments were made and recorded. Most of these Assignments including those allegedly affecting the notes and mortgage for Plaintiffs residences contained false statements. The Assignments were prepared by specially selected law firms and companies that specialized in providing "mortgage default services" to banks and mortgage companies and which is the subject of a criminal investigation.

78.    In all of these cases, the Assignments were prepared to conceal that no valid or proper assignments of the promissory notes or trust deeds ever occurred.

87.    The foregoing acts and omissions of Defendants constitute violations of the FDCPA, including, but not limited to, 1692c, 1692d, 1692e, 1692f, 1692g, and 1692i.

79.    Plaintiffs and Class members are entitled to recover equitable relief, statutory damages, actual damages, reasonable attorney's fees, and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983
### (Against All Defendants And In Particular Law Enforcement Agencies)

80.    Plaintiff repeats and re-alleges each and every allegation contained above.

81.     Plaintiffs have or will file a claim for damages under Cal. Government Code §810 - 996.6, and until then seek only equitable relief against the Law Enforcement Agencies.

82.     By depriving Plaintiffs of their rights guaranteed to them by federal law as set forth above, Defendants, acting under color of law in evicting Plaintiffs, have violated 42 U.S.C. § 1983 and are subject to relief appropriate to remedy that violation.

**THIRD CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT ("Rosenthal Act")**

**California Civil Code § 1788, et seq.**

**(Against Defendants Law Firms, CALIFORNIA RECONVEYANCE, And Other Loan Servicers Acting As Debt Collectors To Be Alleged By Amendment)**

83.     Plaintiff repeats and re-alleges each and every allegation contained above.

84.     "Debt collectors" named in this cause of action are subject to the Rosenthal Act.

85.     Defendants have concealed the roles of the parties and Plaintiffs are unsure who the other "debt collectors" of the loan are, and Plaintiffs will amend this complaint when the appropriate parties who were debt collectors are discovered.

86.     Defendants' actions constitute a violation of California Civil Code

87.     § 1788, *et seq.*, also known as the Rosenthal Act, in that they threatened to take actions prohibited by law, including, without limitation: falsely stating the amount of a debt; increasing the amount of a debt by including amounts not permitted by law or contract; improperly foreclosing upon the Subject Residence; and using unfair and unconscionable means in an attempt to

1  collect a debt.

2  88.   Defendants' misconduct has caused Plaintiffs to suffer actual

3  damages.

4  89.   As a result of Defendants' misconduct, Plaintiffs are entitled to actual

5  damages and statutory damages in an amount to be determined at trial.  Moreover,

6  said Defendants' misconduct was willful, malicious, and outrageous, and

7  therefore punitive damages are warranted and demanded.

8  90.   Pursuant to the controlling contractual document(s) and applicable

9  law, Plaintiffs are entitled to recover costs and reasonable attorneys' fees.

10  **FOURTH CAUSE OF ACTION**

11  **VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE**

12  **§ 17200**

13  **(Against All Defendants)**

14  91.   Plaintiff repeats and re-alleges each and every allegation contained

15  above.

16  92.   Defendants committed unlawful, unfair and/or fraudulent business

17  practices, as defined by California Business & Professions Code § 17200, by

18  engaging in unlawful, unfair and fraudulent business practices as alleged herein.

19  93.   As a result of Defendants' misconduct, Plaintiffs have suffered various

20  damages and injuries according to proof at trial.

21  94.   Plaintiffs seek injunctive relief enjoining Defendants from engaging in

22  unfair business practices described herein.

23  95.   Plaintiffs further seek restitution, disgorgement of sums wrongfully

24  obtained, costs of suit, reasonable attorneys' fees, and such other and further

25  relief as the Court may deem just and proper.

26  ///

27  ///

28  ///

**FIFTH CAUSE OF ACTION**

**TO SET ASIDE TRUSTEE SALE**

**(Against Defendants CALIFORNIA RECONVEYANCE, BANK OF AMERICA, WASHINGTON MUTUAL)**

96.     Plaintiff repeats and re-alleges each and every allegation contained above.

97.     Defendant BANK OF AMERICA claims to be the owner, by virtue of a trustee's deed from defendant CALIFORNIA RECONVEYANCE to the subject real property.

98.     Defendant CALIFORNIA RECONVEYANCE at all times mentioned in this complaint was engaged in the business as a title insurance company.

99.     Defendant WASHINGTON MUTUAL at all times relevant to this complaint claimed to be the beneficiary under the deed of trust.

100.    On May 9, 2005, for valuable consideration, plaintiffs as borrowers, made, executed, and delivered to defendant a written promissory note.

101.    To secure payment of the principal sum and interest as provided in the note and as part of the same transaction, plaintiffs, as trustors, executed and delivered to defendant WASHINGTON MUTUAL, as beneficiary for trustee CALIFORNIA RECONVEYANCE, a Deed of Trust dated May 23, 2007, by the terms of which plaintiffs, as trustors, conveyed to WASHINGTON MUTUAL, as beneficiary for trustee CALIFORNIA RECONVEYANCE, real property described in paragraph 1.

102.    On June 1, 2007, the deed of trust was recorded against the Subject Property in the Official Records of Orange County, California.

103.    On February 5, 2009, defendant CALIFORNIA RECONVEYANCE caused to be recorded a notice of default and an election to sell in the Official Records of Orange County, California, alleging that: (a) a breach of the obligation secured by the deed of trust had occurred, consisting of plaintiff's alleged failure

1    to pay certain monthly installments of principal and interest totaling $54,009.60;

2    and (b) defendant beneficiary elected to sell, or cause to be sold, the trust property

3    to satisfy that obligation.

4         104.    Plaintiff alleges on information and belief that defendant beneficiary

5    and defendant trustee published and posted, or caused to be published and posted,

6    at various times and in various places certain notices of their intent to sell the trust

7    property at public to purportedly satisfy the obligation secured by the deed of

8    trust, on grounds of the alleged breach of the obligation and under the power of

9    sale in the deed of trust.

10        105.    On May 8, 2009 Defendant trustee caused to be recorded a Notice of

11   Trustee's Sale in the Official Records of Orange County, California, alleging that

12   Defendant trustee will sell the Subject Property at a public auction on May 26,

13   2009 at the North Front Entrance to the County Courthouse, 700 Civic Center

14   Drive West, Santa Ana California. Defendant trustee attempted and purported to

15   sell the trust property as noticed, accepted valuable consideration from defendant

16   BANK OF AMERICA, and then executed and delivered or caused to be executed

17   and delivered a trustee's deed to defendant BANK OF AMERICA. The deed was

18   recorded in the Official Records of Orange County, California, on July 8, 2009.

19        106.    The sale was improperly held and the trustee's deed was wrongfully

20   executed, delivered, and recorded in that it was part of the securitization scheme

21   and fraud as set forth above in violation of the terms and conditions of the

22   promissory note and deed of trust and in violation of the duties and obligations of

23   defendant beneficiary and defendant trustee to plaintiff, and based on forged and

24   fraudulent documents, all to plaintiff's loss and damage in that plaintiffs have

25   been wrongfully deprived of the beneficial use and enjoyment of the real property

26   and has been deprived of legal title by forfeiture.

27        107.    Plaintiffs have no obligation to tender to defendant because, *inter alia*,

28   defendants named herein had no legal right to title or authority to foreclose and

1  pursue sale of the subject property due to multiple illegal and invalid assignments,
2  as well as securitization that separated the Deed from the underlying note as part
3  of a fraudulent scheme, and, furthermore, the loan was not in default.  In addition,
4  the in the origination of the Subject Loan, the Truth In Lending Act was violated
5  which specifically provides tender is NOT required.

6      108.    However, Plaintiff is ready, willing, and able to tender sums, if any,
7  that the Court finds due and owing on rendering the accounting requested in the
8  Eighth Cause of Action of this complaint (*infra*).

**SIXTH CAUSE OF ACTION**

**To Cancel Trustee's Deed**

**(As Against Defendant BANK OF AMERICA)**

12      109.    Plaintiff re-alleges and incorporates by reference all the allegations set
13  forth above.

14      110.    Defendant BANK OF AMERICA claims an estate or interest in the
15  subject real adverse to that of plaintiff, but defendant's claims are without any
16  lawful rights.

17      111.    The claims of defendant BANK OF AMERICA are based on the
18  trustee's deed purporting to convey the Subject Property to defendant BANK OF
19  AMERICA.

20      112.    Although the trustee's deed appears valid on its face, it is invalid,
21  void, and of no force or effect regarding plaintiffs' interests in the subject real
22  property and BANK OF AMERICA had at all times mentioned herein and has
23  actual notice of such.

24      113.    The estate in the described real property claimed by defendant BANK
25  OF AMERICA based on the trustee's deed, is a cloud on plaintiffs' title in and to
26  the subject real property, tends to depreciate its market value, restricts plaintiffs'
27  full use and enjoyment of the real property, and hinders plaintiffs' right to
28  unrestricted alienation of it. If the trustee's deed is not delivered and canceled,

1  there is a reasonable fear that plaintiff will suffer serious injury.

2  **SEVENTH CAUSE OF ACTION**

3  **TO QUIET TITLE**

4  **(As Against Bank of America and All Defendants Claiming An Interest In**

5  **The Subject Property)**

6  114.  Plaintiff re-alleges and incorporates by reference all the allegations set

7  forth above.

8  115.  Plaintiff names as defendants in this action all persons unknown

9  claiming (a) any legal or equitable right, title, estate, lien, or interest in the

10  Subject Property described in the complaint adverse to plaintiff's title, or (b) any

11  cloud on plaintiffs' title to the property. The claims of each unknown defendant

12  are without any right, and these defendants have no right, title, estate, lien, or

13  interest in the subject property.

14  116.  Plaintiff desires and is entitled to a judicial declaration quieting title in

15  plaintiffs as of June 1, 2007.

16  **EIGHTH CAUSE OF ACTION**

17  **ACCOUNTING**

18  **(As Against All Defendants Except Law Enforcement Agencies)**

19  117.  Plaintiffs re-allege and incorporate by reference all the allegations set

20  forth above.

21  118.  Defendant CALIFORNIA RECONVEYANCE has alleged certain

22  monies due from plaintiffs, however plaintiffs allege that said monies are not due

23  or that the amount alleged by defendant(s) is incorrect.

24  119.  As defendant CALIFORNIA RECONVEYANCE alleges money due

25  from plaintiffs, allegedly obtaining interest in the mortgage related to the Subject

26  Property, CALIFORNIA RECONVEYANCE is in a fiduciary relationship to

27  plaintiffs, and therefore an accounting is due from CALIFORNIA

28  RECONVEYANCE that must take into account all monies paid on the subject

1 | mortgage, either by named defendant investors or as-yet unnamed defendants.

2 |     120.    Plaintiffs believe they overpaid on the subject loan and no money is

3 | owing to any Defendant.

4 |     121.    In the event any of the parties claims any amount owing it is unknown

5 | to plaintiffs and cannot be determined without an accounting.

6 | **NINTH CAUSE OF ACTION**

7 | **TRESPASS**

8 | **(Against Defendants BANK OF AMERICA, NAIMAN, KIP ADKINS**

9 | **and AEGIS REALTY PARTNERS, INC. )**

10 |     122.    Plaintiffs re-allege and incorporate by reference all the allegations set

11 | forth above.

12 |     123.    Plaintiffs allege exclusive right to the Subject Property, and that they

13 | are and at all times mentioned herein the rightful possessor of title.

14 |     124.    Defendants, and all of them, have unlawfully and intentionally entered

15 | and invaded the Subject Property, violating plaintiffs' exclusive rights to same.

16 |     125.    Defendants' unlawful and intentional invasion and entering of the

17 | Subject Property has been ongoing and repeated, and has caused Plaintiffs great

18 | emotional distress and damage, as well as economic damages.

19 | **TENTH CAUSE OF ACTION**

20 | **ABUSE OF PROCESS**

21 | **(Against All Defendants)**

22 |     126.    Plaintiffs re-allege and incorporate by reference all the allegations set

23 | forth above.

24 |     127.    Defendants have used the inherent power of the courts to further their

25 | ulterior motives.

26 |     128.    Defendants have known, or should have known, that the foreclosure

27 | on the Subject Property was invalid and illegal, yet defendants pursued

28 | possession of the Subject Property *via* the power of the courts by filing an

1   improper unlawful detainer action.

2       129.    Defendants willfully furthered their wrongs by attempting to enforce

3   an unlawful Writ of Possession obtained from said wrongful unlawful detainer.

4       130.    Defendants' sole ulterior motive was to gain possession of the Subject

5   Property by any means necessary including the improper use of the courts, an

6   abuse of process.

7       131.    Defendants performed the acts alleged herein willfully and with full

8   knowledge of their illegality.

9       132.    Because of Defendant's abuse of power, plaintiffs have suffered - and

10  continue to suffer - extreme emotional distress as well as economic damages.

11      133.    Plaintiffs therefore seek all proper remedies with respect to the

12  Defendants' misuse of judicial power, including damages relating to the Plaintiffs'

13  obligation to hire counsel, Plaintiffs' eviction from their home and related

14  economic damages, and damages for emotional distress related thereto,

15

16  **WHEREFORE**, plaintiffs demand judgment as follows:

17

18  1. That the Court issue (a) a declaration that the sale of the Subject Property is null

19  and void and of no force or effect, and (b) an order setting aside the trustee sale of

20  the real property.

21

22  2. That the Court (a) issue an order that defendant BANK OF AMERICA deliver

23  the trustee's deed to the Court, and (b) cancel the trustee's deed.

24

25  3. That the Court order judgment quieting title in plaintiff Plaintiffs as owners of

26  the subject real property, declaring that defendant BANK OF AMERICA has no

27  right, title, estate, lien, or interest in the Subject Property adverse to plaintiffs.

28

4. That the Court render between plaintiffs, and all defendants except Law Enforcement, an accounting determining the amount, if any, actually owed to defendants by plaintiffs, or by defendants to plaintiffs.

5. That the Court award damages for the unlawful detention of the premises.

7. As against Defendants and for plaintiffs an amount in a FDCPA case;

6. That plaintiffs recover all attorney fees and costs in this action, and that the Court award any other appropriate relief;

7. Declaratory judgment that Law Firms conduct violated the FDCPA, the Rosenthal Act and that all defendants violated B&P Code 17200, and an injunction prohibiting such acts in the future;

8. An award of compensatory damages in an amount deemed appropriate by the trier of facts and/or appropriate equitable relief;

9. An award of pre-judgment and post-judgment interest;

10. Enjoin Defendants, their successors in office, agents, employees, and all other persons in active concert and participation with them from continuing their practice of pursuing improper eviction actions;

11. As against Law Enforcement Agencies that they stop evicting home owners until and unless they establish procedures for such that comply with the law;

12. Any other further legal and/or equitable relief to which Plaintiffs might be entitled at law or which the Court deems proper, including, according to proof,

1    exemplary or punitive damages as may be necessary and appropriate to punish and

2    deter any reprehensible or intentional misconduct.

3                            **DEMAND FOR JURY TRIAL**

4            Plaintiffs demand a trial by jury.

5

6    Dated:  December 28, 2010                    PINES AND ASSOCIATES

7

8

9                                            By:

10                                               Michael T. Pines
                                                 Attorney for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

29

COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Jay C. Gandhi.

The case number on all documents filed with the Court should read as follows:

## SACV10- 1987 DOC (JCGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

RENE ZEPEDA, OTILIA A. ZEPEDA, and ANA BODDEKER

**DEFENDANTS**
WASHINGTON MUTUAL BANK, F.A., et. al.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

PINES AND ASSOCIATES, Michael T. Pines (SBN 77771)
732 N. Coast Highway 101, Suite B
Encinitas, CA 92024

Attorneys (If Known)

**BY FAX**

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Fed. Fair Debt Collection Practices Act ("FDCPA") 15 USC §1692- ILLEGAL PRACTICES IN COLLECTION OF PLAINTIFFS DEBT

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/ PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

SACV10-01987

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No  ☐ Yes
If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No  ☐ Yes
If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | Alameda County, New York, Washington. |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER):   _(signature)_    Date  12/88/10

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

Name & Address:
PINES AND ASSOCIATES
Michael T. Pines (SBN 77771)
732 N. Coast Highway 101, Suite B
Encinitas, CA 92024
Tel: 760-642-0413

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE ZEPEDA, OTILIA A. ZEPEDA, and ANA BODDEKER<br><br>PLAINTIFF(S)<br><br>v.<br><br>WASHINGTON MUTUAL BANK, F.A., (See Attached)<br><br>DEFENDANT(S). | CASE NUMBER<br><br>SACV10-01987 DOC JCG<br><br><br>SUMMONS |

TO:   DEFENDANT(S): _____
_____

A lawsuit has been filed against you.

    Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Michael T. Pines_____, whose address is _732 N. Coast Highway 101, Suite B, Encinitas, CA 92024_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: DEC 2 9 2010

By: _____
CHRISTOPHER POWERS

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                                            SUMMONS

**ADDITIONAL DEFENDANTS**

CALIFORNIA RECONVEYANCE COMPANY; BANK OF AMERICA, N.A., SUCCESSOR BY MERGE TO LASALLE BANK NA AS TRUSTEE FOR WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA6 TRUST; JP MORGAN CHASE BANK, N.A., SUCCESSOR IN INTEREST TO WASHINGTON MUTUAL BANK, F.A; LASALLE BANK N.A., AS TRUSTEE FOR WAMU; RANDAL NAIMAN, an individual; NAIMAN LAW GROUP;  WILLOUGHBY BEAN LLC; SARALAND INVESTMENTS; DESCHUTES RIVER PROPERTIES; NORTHWEST PROPERTIES ASSOCIATES; PACIFIC BEND ASSOCIATES; LB MARSHELL LAW; KIP ADKINS; AEGIS REALTY PARTNERS, INC; ORANGE COUNTY SHERIFF'S DEPARTMENT; NEWPORT BEACH POLICE DEPARTMENT; and DOES 1-10;